UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ALEJANDRO GUERRERO GUEVARA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:25-cv-00595-MPB-MKK |
| ) | |
| BRISON SWEARINGEN, ) | |
| FIELD OFFICE DIRECTOR, ) | |
| TODD M. LYONS, ) | |
| KRISTI NOEM, ) | |
| PAMELA J. BONDI, ) | |
| ) | |
| Respondents. ) | |

**ORDER GRANTING PETITION FOR HABEAS CORPUS**

Alejandro Guerrero Guevara ("Petitioner") is a native of Mexico who entered the United States without inspection around 1997. Dkt. 1 ¶ 1. On July 8, 2025, federal agents detained Petitioner in Indianapolis, Indiana, and transferred him to Clay County Jail in Brazil, Indiana. Petitioner now petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241, seeking release from custody and declaratory relief that he is subject to detention pursuant to 8 U.S.C. § 1226(a). *Id.*, ¶ 8. For the reasons explained below, the Court **grants** the petition to the extent that **no later than December 19, 2025, Respondents must release Petitioner from custody**, under the most recent conditions of bond and supervision.

I.  **Background**

Petitioner entered the United States without inspection around the year 1997. Dkt. 1 ¶ 1. He has resided in the United States continuously with his family, including his U.S.-citizen children, since then. *Id.*, ¶ 2. In 2011, Immigration and Customs Enforcement ("ICE") arrested Petitioner, issued a Notice to Appear commencing removal proceedings, and released him on a

1

$3,000 bond. Dkt. 8-1 (I-213 narrative). Petitioner applied for, but never received permanent residence. *Id.* It does not appear that Petitioner is subject to a final order of removal.

In 2024, Petitioner was placed on probation for the class C misdemeanor of operating a vehicle while intoxicated. *Id*. On June 23, 2025, Petitioner was arrested for violating probation and released on bond. *Id*. On July 8, ICE arrested Petitioner again pursuant to an ICE detainer and transferred him to Clay County Jail, where he remains detained. *Id.* In arresting Petitioner, ICE issued a Form I-200 Warrant for Arrest and a Warrant for Removal. *Id.* The "Form I-200 Warrant of Arrest of Alien" commands "any immigration officer authorized pursuant to sections 236 [8 U.S.C. § 1226] and 287 [8 U.S.C. § 1357] of the Immigration and Nationality Act" to arrest the designated noncitizen.

Petitioner filed a request for a custody redetermination hearing on August 1, 2025. Dkt. 1 ¶ 3; After conducting the bond hearing, the Immigration Judge ("IJ") ordered Petitioner to be released on a $7,500 bond pursuant to 8 C.F.R. § 1236 and § 1226. Dkt. 1-3; 1-4. On August 12, ICE appealed the bond determination and, on October 20, the BIA ordered that Petitioner be detained without bond based on its September 5, 2025, decision *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). Dkt. 1 ¶ 4; dkt. 1-6. *Matter of Yajure Hurtado* reinterpreted 8 U.S.C. § 1225(b)(2) [§ 235(b)(2) of the Immigration and Nationality Act ("INA")] and found that noncitizens who entered the country without inspection—no matter how long ago—were "applicants for admission" and subject to mandatory detention under § 1225(b)(2). Thus, even though an IJ granted Petitioner bond in August, he remains detained.

**II.    Discussion**

Petitioner claims that his current detention violates 8 U.S.C. § 1226(a) (Count I); the bond regulations in 8 C.F.R. §§ 236.1, 1236.1, and 1003.19 (Count II); and the Due Process Clause of

2

the Fifth Amendment (Count III). Dkt. 1 ¶¶ 49–64. Respondents argue that Petitioner's claim is premature, that he is lawfully detained pursuant to 8 U.S.C. § 1225(b)(2), he is lawfully detained pursuant to 8 U.S.C. § 1226, his detention is constitutionally reasonable, and the *Maldonado Bautista* class action does not afford relief. Dkt. 8. Petitioner did not file a reply. As will be explained below, the Court finds that Petitioner's detention is governed by § 1226 and that it is unlawful because Petitioner has been ordered released on bond. Because Petitioner is entitled to habeas corpus relief on these grounds, the Court does address the constitutional, regulatory, or class action arguments.

### A. Exhaustion

Respondents argue that the instant petition is premature because Petitioner has not exhausted all available administrative remedies by appealing the BIA's decision to vacate the IJ's bond determination. Dkt. 8 at 3–4. Petitioner argues that he has already exhausted his administrative remedies by moving for a bond hearing and then opposing ICE's appeal of the bond determination. Dkt. 1 ¶¶ 16–17. Furthermore, any attempt to further exhaust his administrative remedies would be futile because an IJ would deny his request for a bond hearing under *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). *See* dkt. 1 ¶ 17.[1]

Respondents do not cite a statute requiring Petitioner to exhaust administrative remedies before seeking habeas relief in these circumstances. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Requiring Petitioner to appeal the BIA's decision here would be futile. As another trial court in the Seventh Circuit has

---

[1] As will be explained below, *Matter of Hurtado's* rationale is that noncitizens who entered without inspection are subject to the mandatory detention provision in § 1225, not the discretionary detention provision in § 1226(a).

3

noted, "[Respondents'] argument is Kafkaesque. Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue." *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) (internal quotes and citations omitted). Finding this rationale persuasive, the Court determines that any further exhaustion of Petitioner's administrative remedies, such as they are, would be futile and, therefore, not required.

### B. Eligibility for Bond under 8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an IJ. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section 1226(a) provides:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States ....
> [T]he Attorney General—
>
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond . . . ; or
> (B) conditional parole . . ..

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that

aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers *shall* order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." In relevant part, it provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be* detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). According to 8 U.S.C. § 1225(a)(1), an "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." In other words, noncitizens subject to

5

1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

### i. Petitioner Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)

The record shows that DHS is detaining Petitioner pursuant to § 1226. ICE first encountered Petitioner in 2011. If Petitioner was an "alien arriving in the United States," the government was obligated by statute to immediately order Petitioner removed from the United States or refer him to an asylum officer, at which point he would have been subject to either removal or mandatory detention pending review of his claim. 8 U.S.C. § 1225(b)(1). Alternatively, if Petitioner was "an applicant for admission" to the United States, the government was obligated to detain him pending resolution of removal proceedings. 8 U.S.C. § 1225(b)(2).

The government did not exercise either authority. Instead, DHS issued a Notice to Appear commencing removal proceedings and released Petitioner on a $3,000 bond. Dkt. 8-1 (I-213 narrative); dkt. 1-1. Section 1226—*not* § 1225—explicitly authorizes release on bond. When Petitioner was arrested again in 2025, he was again granted bond explicitly pursuant to § 1226. Dkt. 1-3; dkt. 1-4. Furthermore, Petitioner was arrested pursuant to a warrant that explicitly invokes § 1226, which authorizes the arrest and detention of aliens with a warrant. Section 1225 does not reference warrants. *See Campos Leon v. Forestal*, No. 1:25-CV-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sept. 22, 2025) ("It is difficult to find that § 1226(a) carries any meaning if the aliens it expressly addresses—those arrested and detained pursuant to warrants—are not actually subject to its provisions."). "[T]he Government has affirmatively decided to treat" Petitioner "as being detained under Section 1226(a) and it cannot now be heard to change its position to claim that he is detained under Section 1225(b)." *Patel v. Crowley*, No. 25 C 11180,

2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025) (citing *Kennedy v. Kijakazi*, No. 22-2258, 2023 WL 1990303, at *3 (7th Cir. Feb. 14, 2023)).

The few district court opinions that have found that noncitizens arrested in the interior were properly detained pursuant to § 1225 emphasize that in those instances, DHS did not issue a warrant for the alien's arrest and detention. *See, e.g., Sandoval v. Acuna*, 2025 WL 3048926, at *5 (W.D. La. Oct. 31, 2025) ("Petitioner does not allege that the Attorney General issued a warrant for her arrest and detention, further indicating that Petitioner is properly detained under § 1225(b) as an 'applicant for admission,' not § 1226(a)"); *Vargas Lopez v. Trump*, 2025 WL 2780351, at *7 (D. Neb. Sept. 30, 2025) ("This failure of proof of a warrant for Vargas Lopez's arrest is fatal to the Second Cause of action. Vargas Lopez has not provided this Court with the documents necessary for Vargas Lopez to be eligible for release on bond under § 1226."). In contrast, *Cirrus Rojas v. Olson, et al.*, No. 25-cv-1437-bhl, dkt. 20, (E.D. Wis. Oct. 31, 2025) found that a petitioner's detention fell under § 1225 despite having been issued a warrant citing § 1226 and granted bond in a previous hearing. *See also Mejia Olalde v. Noem*, 2025 WL 3131942, at *2 (E.D. Mo. Nov. 10, 2025) (finding that the plain language of § 1225(b)(2) supports the conclusion that Petitioner, who had been living in the United States for 40 years, was subject to mandatory detention as an "applicant for admission."). Neither *Cirrus Rojas* nor *Mejia Olalde* compel the Court to conclude that § 1225 applies here. The cases are not identical factually and the Court finds here that the nature and circumstances of Petitioner's arrest and proceedings support application of § 1226 rather than § 1225.

The text and context of the statute contradict the BIA's decision, which is not binding on this Court, and support Petitioner's position that ICE's authority to detain him derives from § 1226(a) and not from § 1225(b). *See Cazarez-Gonzales v. Olson*, No. 2:25-CV-590 (S.D. Ind. Dec.

7

5 2025) (collecting cases); *see also Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *8-*10 (7th Cir. Dec. 11, 2025) (stating that "Plaintiffs have the better argument on the current record" referring to argument that "ICE's authority to detain a noncitizen discovered within the country derives from § 1226(a) and not from § 1225(b)."). Respondents argue that § 1225(b)(2) pertains to Petitioner because he is an "applicant for admission" who is "not clearly and beyond a doubt entitled to be admitted." Dkt. 8 at 6. Respondents do not appear to argue that Petitioner is seeking admission, nor could they. "'[S]eeking' means 'asking for' or 'trying to acquire or gain' and implies some kind of affirmative action on the part of the applicant." *Alejandro v. Olson*, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *see also Beltran Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (rejecting the respondents' interpretation of section 1225(b)(2) to cover all noncitizens who are present without being admitted because "[t]he term 'seeking' 'implies action'" and "those who have been present in the country for years are not actively 'seeking admission.'"). Petitioner is not "seeking admission." He entered the United States decades ago and has lived here ever since. Noncitizens such as Petitioner are "seeking to remain in the United States" not seeking to be admitted. *Alejandro*, 2025 WL 2896348, at *7 ("[Petitioner] is not actively 'seeking' 'lawful entry' because he entered the United States over 20 years ago."); *Lopez Benitez v. Francis*, 2025 WL 2371588, at *7 (S.D.N.Y. Aug. 13, 2025) (explaining that "seeking admission" means that a noncitizen must be actively "seeking" "lawful entry").

The fact that Petitioner fits two out of three criteria does not suffice to show that § 1225(b)(2) applies to Petitioner. That Petitioner plainly does not fit into the third criterion "seeking admission," adds even more support to the conclusion that § 1225(b)(2) does not apply to Petitioner. *See Castanon-Nava*, 2025 WL 3552514, at *9 (7th Cir. Dec. 11, 2025) ("And while a

noncitizen arrested in the Midwest might qualify as 'an alien present in the United States who had not been admitted,' § 1225(a)(1), the mandatory detention provision upon which Defendants rely, limits its scope to an 'applicant for admission' who is 'seeking admission,' § 1225(b)(2)(A).").

Furthermore, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted). Considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" noncitizens attempting to enter the United States. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and it repeatedly refers to "arriving" aliens throughout. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly addresses "crewm[e]n" and "stowaway[s]" in § 1225(b)(2), reflecting that Congress envisions § 1225 to apply broadly to "arriving" noncitizens—not just § 1225(b)(1). In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports. As Respondents concede, Petitioner "is not 'arriving' in the United States." Dkt. 8 at 6.

Respondents' interpretation also disregards the relationship between § 1225 and § 1226 within the INA. While § 1225 focuses on "inspection" of "arriving aliens," § 1226 pertains to the "[a]pprehension and detention of aliens." The plain language here suggests that § 1226—not §

9

1225—applies to Petitioner because he is an alien, who was "apprehended" and "detained" after a warrant was issued for his arrest. The fact that these two classes of noncitizens would be treated differently makes sense within broader immigration law. As the Seventh Circuit explained, "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law. Indeed, '[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.'" *Castanon-Nava*, 2025 WL 3552514, at *9 (quoting *Zadvydas*, 533 U.S. at 693); *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.").

Last, Respondents' interpretation of § 1225(b)(2) would make the recently enacted amendment to § 1226(c) superfluous. Congress passed the Laken Riley Act in 2025 to amend section 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of non-bondable aliens are aliens not admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). Under the Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act. Courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009). "A basic canon of construction requires us to give meaning to every word of a statute."

10

*Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 605 (7th Cir. 2012). Adopting Respondents' reading would render § 1226(c) completely unnecessary.

### ii. Section 1226(e) Does Not Bar This Court's Jurisdiction Over the Petition

In the alternative, Respondents argue that Petitioner is lawfully detained under § 1226(a) "because he will have the opportunity to receive a hearing before an Immigration Judge." Dkt. 8 at 12. Thus, this Court cannot review the IJ's decision due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

Petitioner does not reply to this argument. Nevertheless, Respondents' position is inexplicable given that Petitioner had a bond hearing and was granted bond in August. Furthermore, the BIA's decision to sustain ICE's appeal and vacate the bond order in light of *Matter of Yajure Hurtado* is not the kind discretionary judgment to deny or revoke bond or parole barred by § 1226(e). Indeed, *Matter of Yajure Hurtado*—the basis for the BIA's decision—plainly states that IJs "lack authority to *hear bond requests* or to grant bond to aliens who are present in the United States without admission." 29 I. & N. Dec. at 225 (emphasis added). This implies that IJs following *Matter of Yajure Hurtado* cannot hear bond requests for noncitizens such as Petitioner. Respondents cite *Demore v. Kim*, 583 U.S. 510 (2003) as support for their position, but this case held that § 1226(e) did *not* deprive courts of habeas jurisdiction over a challenge to detention under § 1226(c) because the petitioner did not challenge a discretionary judgment or a decision, but the statutory framework permitting his detention without bail. 530 U.S. at 516–17. In sum, § 1226(e)

does not preclude jurisdiction over the instant petition because it does not challenge a discretionary judgment denying or revoking bond.

### III. Scope of Relief

Petitioner is entitled to habeas relief because his continued detention despite being granted bond violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). Immediate release is the customary remedy in habeas proceedings. *See Thursaissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). This remedy fits here because Petitioner has already been granted bond and thus, an IJ has already made the decision to release Petitioner.

### IV. Conclusion

The Court **grants** the petition to the extent that **no later than Friday, December 19, 2025, Respondents must release Petitioner from custody**, under the most recent conditions of bond and supervision. No later than **Monday, December 22, 2025,** Respondents must file a notice with the Court certifying that they have complied with the Court's order. The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Dated: December 16, 2025

Matthew P. Brookman, Judge
United States District Court
Southern District of Indiana

Distribution:

Brian Scott Green
Law Office of Brian Green
briangreen@greenusimmigration.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov